**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| KWAG | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 1:18-cv-00395-RBW |
| | ) | |
| v. | ) | |
| | ) | |
| S & K CORPORATION, et al. | ) | |
| | ) | |
| Defendants. | ) | |

_____

### JOINT MOTION TO APPROVE SETTLEMENT AGREEMENT
### AND DISMISS ALL CLAIMS WITH PREJUDICE

Defendants S & K Corporation, Kyungja Jeong, and Seyoung Jeong (collectively, "Defendants"), by and through undersigned counsel, and Plaintiff Chul Ho Kwag ("Plaintiff"), by and through undersigned counsel, (collectively, the "Parties"), hereby jointly move this Court to approve the Settlement Agreement, attached hereto as Exhibit 1, which will resolve Plaintiff's claims against Defendants under the Fair Labor Standards Act (the "FLSA"), the District of Columbia Minimum Wage Act ("DCMWA"), and the District of Columbia Wage Payment and Collection Law ("DCWPCL"), and in support thereof, state as follows:

### FACTS AND PROCEDURAL HISTORY

This lawsuit was initiated upon the filing of Plaintiff's Complaint on February 21, 2018. The Plaintiff alleged that he worked as an employee of Defendants and that during his employ, he was not paid the applicable minimum wage and overtime compensation as required by Federal and District of Columbia law. Defendants deny these allegations.

In an effort to resolve this dispute, the Parties engaged in good-faith negotiations, which resulted in a settlement agreement that the Parties have executed and attached hereto as Exhibit

1. The Parties now seek this Court's approval of that settlement agreement, which the Parties believe is a fair and reasonable compromise.

## ARGUMENT

It is well established that the FLSA's "provisions are mandatory and generally not subject to bargaining, waiver, or modification by contract or settlement." *Sarceno v. Choi,* 66 F. Supp. 3d 157, 167 (D.D.C. 2014) (citing *Duprey v. Scotts Co*., *LLC*, 30 F. Supp. 3d 404, 407 (D. Md. 2014). However, when employees are represented by an attorney, any settlement "is likely to reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute." *Id*. at 169 (citing *Lynn's Food Stores, Inc. v. United State Department of Labor (Lynn's Food),* 679 F.2d 1350, 1354 (11th Cir. 1982) (internal quotations and citations omitted)).

In considering whether a settlement agreement should be approved for claims asserted under the FLSA, Courts in this Circuit typically consider whether a proposed settlement fairly resolves a bona fide dispute; the fairness and reasonableness of the settlement; and the reasonableness of attorneys' fees. *See Carrillo v. Dandan Inc*., 51 F. Supp. 3d 124, 132-134 (D.D.C. 2014).

Plaintiff and Defendants have been represented by separate counsel, and, by conducting formal discovery (including an exchange of written sworn interrogatory responses and a full production of requested documents) and engaging in numerous settlement discussions, the Parties have litigated and settled this matter in a manner that assures an adversarial context. *See, e.g., Sarceno*, 66 F. Supp. 3d at 176 (citing *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 366 (S.D.N.Y. 2013) ("[C]ourts typically regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement.") (internal quotation marks and

citation omitted)). While this alone tends to show that the relevant factors are most likely to be satisfied, other factors also establish that the proposed settlement resolves a *bona fide* dispute, is fair and reasonable, and includes a reasonable payment of attorneys' fees.

## I.       The Proposed Settlement Resolves a *Bona Fide* Dispute

The Parties dispute over the amount of the unpaid wages.  Defendants assert that Plaintiff's calculations are inflated, and Plaintiff, by contrast, asserts that the calculations are accurate and that Defendants' records will support a claim for unpaid wages and damages under the FLSA.  Accordingly, the Parties submit that Plaintiff's claims are disputed, and that the proposed settlement resolves a *bona fide* dispute.

## II.      The Proposed Settlement is Fair and Reasonable as to the Plaintiffs

Where the threshold requirement that a bona fide dispute is met, courts have used the following factors to determine whether a proposed settlement is fair and reasonable: (1) the existence of collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiff's success on the merits; (5) the range of possible recovery; and (6) the opinions of counsel." *Carrillo*, 51 F. Supp. 3d at 132 (internal citations omitted). Further, "a court should be mindful of the strong presumption in favor of finding a settlement fair." *Id*. at 133 (internal citations and quotations omitted).

Here, there is no collusion behind the settlement and further litigation would increase the expense to both parties. With respect to discovery, the discovery period has closed and the parties engaged in formal written discovery including a production of all time and compensation records in the Parties' possession, custody, and control.  The Parties opted to be referred to

mediation and agreed to the terms of the proposed Settlement Agreement prior to the scheduled date of the settlement conference.

Counsels for the Parties have both litigated FLSA cases in various state and federal courts, including the District of Columbia, Virginia, Maryland and New York, and agree that the settlement terms are fair and reasonable.  Notably, while the Parties dispute the amount of hours Plaintiff allegedly worked, and notwithstanding any disagreement as to Plaintiff's likelihood of success, Defendants have paid Plaintiff Thirty-Five Thousand Dollars ($35,000.00) to settle this matter, which was received by Plaintiff's counsel on March 1, 2019 and held currently in trust to be released upon the court's approval of this settlement ($18,000 to Plaintiff and $17,000 including cost and expenses to Plaintiff's counsel).  Accordingly, this Court should hold that the settlement is fair and reasonable as to the Plaintiff.

A.      The Proposed Monetary Terms of the Settlement Are Fair Under the Six-Factor Approach Referenced in *Carrillo*

The six-factor test referenced in *Carrillo* considers: "(1) the existence of collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiff's success on the merits; (5) the range of possible recovery; and (6) the opinions of counsel."*Carrillo*, 51 F.Supp.3d at 132 (external citations omitted).  Consideration of these six factors weigh in favor of approving the monetary terms of the settlement agreement.

1.      *There Was No Collusion Behind the Settlement*

Simply stated, all Parties in this matter were represented by independent counsel who negotiated, with the Parties' input, fair and reasonable monetary terms for a settlement agreement that was agreed upon by all the Parties.  Plaintiff believes that that he was not paid approximately $13,000.00 in unpaid minimum and overtime wages, and the liquidated damages

under FLSA is the amount equal to the unpaid wages.  Plaintiff's attorney has incurred so far $36,910 in attorney's fee (Michael Ryu, attorney, 56.8 hours x $430 per hour; Eileen Matos, paralegal, 56.8 hours x $180 hours; Lakita Marshall, paralegal, 8.1 hours x $180 hours; Heejung Yang, paralegal, 6.7 hours x $120 per hour which has not been paid by Plaintiff) and about $500 in costs and expenses.

Plaintiff will receive $18,000 and Plaintiff's counsel will receive $17,000 including costs and expenses. Plaintiff is receiving approximately 139% of the maximum unpaid wages that Plaintiff alleges. Plaintiff's attorney is receiving approximately 46% of the attorney's fee so far incurred. Plaintiff's attorney is foregoing 54% of the attorney's fee so far incurred to facilitate the settlement.  Plaintiff is satisfied with the amount that exceeds his initial expectation and eager to see the lump sum in his hands.  As such, the settlement figures themselves establish that the monetary terms of the settlement agreement were not the product of collusion between the Parties and/or their respective counsel.

2. *The Remainder of the Litigation is Likely to be Expensive and Long.*

As noted above, the Parties engaged in discovery while continuing settlement negotiations since the commencement of this litigation.  While the Parties have completed the discovery at the reasonably controlled attorney's hours, the next steps of the litigation dispositive motions and trial will incur a substantial amount of attorney's fees, for example, at least $30,000 each side. Particularly in view that the maximum unpaid wages alleged is $13,000, and 139% of the maximum unpaid wages is recovered and Plaintiff is satisfied with the amount that exceeds his initial expectation and eager to see the lump sum in his hands, this factor weighs in favor of approving the proposed monetary terms of the settlement agreement.

3. *Discovery Has Been Completed.*

As noted above, the Parties have completed the discovery and in a good position to evaluate the strength and weakness of their cases and Plaintiff could reach a fair and reasonable compromise.  Rather than continuing with what will likely be an expensive litigation compared to the amount at stake by going through the dispositive motions and trial including pretrial motions, the Parties seek to resolve all matters by entering into a fair and reasonable settlement agreement.  Accordingly, this factor weighs in favor of approving the proposed monetary terms of the settlement agreement.

4.   *The Parties Disagree on the Probability of Plaintiff's Success on the Merits*

The Parties disagree on the probability of Plaintiff's success on the merits.  The Parties do agree, however, that settling this matter under the proposed monetary terms is not only fair and reasonable, but also preferred by all the Parties as a quick and cost-effective resolution to this matter.  Indeed, this Court has previously encouraged settlement, and the Parties are mindful that a "settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution." *Sarceno*, 78 F.Supp.3d at 451 (internal quotations and citations omitted).

5.   *The Proposed Monetary Terms Are Fair Considering the Range of Possible Recovery*

As noted above, Plaintiff believes that that he was not paid approximately $13,000.00 in unpaid minimum and overtime wages, and the liquidated damages under FLSA is the amount equal to the unpaid wages.  Plaintiff's attorney has incurred so far $36,910 in attorney's fee (Michael Ryu, attorney, 56.8 hours x $430 per hour; Eileen Matos, paralegal, 56.8 hours x $180 hours; Lakita Marshall, paralegal, 8.1 hours x $180 hours; Heejung Yang, paralegal, 6.7 hours x $120 per hour which has not been paid by Plaintiff) and about $500 in costs and expenses.

Plaintiff will receive $18,000 and Plaintiff's counsel will receive $17,000 including costs and expenses. Plaintiff is receiving approximately 139% of the maximum unpaid wages that Plaintiff alleges. Plaintiff's attorney is receiving approximately 46% of the attorney's fee so far incurred. Plaintiff's attorney is foregoing 54% of the attorney's fee so far incurred to facilitate the settlement. Plaintiff is satisfied with the amount that exceeds his initial expectation and eager to see the lump sum in his hands. As such, the settlement figures themselves establish that the monetary terms of the settlement agreement were not the product of collusion between the Parties and/or their respective counsel.

Further, the corporate Defendant has already gone out of business. It does not have any assets or revenue streams left. With regard to the individual Defendants, their liabilities as employers are disputed by Defendants, and they are around the ages of 70s and retired now. Their real property assets are partly encumbered by mortgages and held by the tenancy by entirety. Therefore, recovery of the judgment would need a substantial amount of collection efforts with unclear prospect for full recovery although it might not be impossible. As such, the settlement figures are fair considering the range of Plaintiff's possible recovery.

   6.    *Counsel for the Parties Believe the Proposed Monetary Terms of the Settlement Agreement Are Fair*

Simply stated, the Parties have independent counsels who believe the settlement agreement is fair and reasonable. The Parties are avoiding what would likely be an expensive and protracted litigation, particularly compared to the amount at stake, in addition to all the uncertainties that are inherent in litigation. Even after Plaintiff's attorneys' fees, Plaintiff is still receiving 139% of the amount of wages he is alleging is owed by the Defendants. As such, in light of the foregoing and the other issues addressed above, counsels for the Parties believe the proposed monetary terms of the settlement agreement are fair and reasonable.

7

B.     The Proposed Monetary Terms of the Settlement Are Fair Under the Three-Factor
       Approach Referenced in *Carrillo*

Under the three-factor test referenced in *Carrillo*, a court "must consider whether the

proposed settlement (1) was the product of overreaching by the employer; (2) whether the

settlement was the product of negotiation between represented parties following . . . [a]rm's

length bargaining; and (3) whether there exist serious impediments to the collection of a

judgment by the plaintiffs." *Carrillo*, 51 F.Supp.3d at 132(internal quotations and citations

omitted). Consideration of these three factors weigh in favor of approving the monetary terms of

the settlement agreement.

1.     The Agreed-Upon Monetary Terms of the Settlement Agreement Were Not
       the Product of Overreaching by the Alleged Employer

This factor is similar to the first factor of the six-factor approach applied above.  As noted

above, all Parties in this matter were represented by independent counsel who negotiated, with

the Parties' input, fair and reasonable monetary terms for a settlement agreement that was agreed

upon by all the Parties.

Plaintiff believes that that he was not paid approximately $13,000.00 in unpaid minimum

and overtime wages, and the liquidated damages under FLSA is the amount equal to the unpaid

wages.  Plaintiff's attorney has incurred so far $36,910 in attorney's fee (Michael Ryu, attorney,

56.8 hours x $430 per hour; Eileen Matos, paralegal, 56.8 hours x $180 hours; Lakita Marshall,

paralegal, 8.1 hours x $180 hours; Heejung Yang, paralegal, 6.7 hours x $120 per hour which has

not been paid by Plaintiff) and about $500 in costs and expenses.

Plaintiff will receive $18,000 and Plaintiff's counsel will receive $17,000 including costs

and expenses. Plaintiff is receiving approximately 139% of the maximum unpaid wages that

Plaintiff alleges. Plaintiff's attorney is receiving approximately 46% of the attorney's fee so far

incurred. Plaintiff's attorney is foregoing 54% of the attorney's fee so far incurred to facilitate the settlement.  Plaintiff is satisfied with the amount that exceeds his initial expectation and eager to see the lump sum in his hands.  As such, the settlement figures themselves establish that the monetary terms of the settlement agreement were not the product of collusion between the Parties and/or their respective counsel.

2.  *The Settlement Was the Product of Negotiation Between Represented Parties Following Arm's Length Bargaining*

As noted above, the Parties are represented by independent counsels who have been engaging in good-faith settlement discussions since the commencement of this litigation.  The agreed-upon monetary terms of the settlement agreement are the product of nearly ten months of negotiations.  The apportionment of money Defendants are to pay under the proposed settlement agreement reflect arm's length bargaining and monetary terms that are fair and reasonable. Accordingly, this factor weighs in favor of approving the monetary terms of the settlement agreement.

3.  *There Exist Serious Impediments to the Collection of a Judgment by the Plaintiff*

The corporate Defendant has already gone out of business. It does not have any assets or revenue streams left.  With regard to the individual Defendants, their liabilities as employers are disputed by Defendants, and they are around the ages of 70s and retired now. Their real property assets are partly encumbered by mortgages and held by the tenancy by entirety. Therefore, recovery of the judgment would need a substantial amount of collection efforts with unclear prospect for full recovery although it might not be impossible.  As such, the settlement figures are fair considering the range of Plaintiff's possible recovery.

**III.   The Settlement Includes a Reasonable Payment of Attorneys' Fees**

The settlement includes a payment for attorneys' fees and costs in the amount of $17,000.00 to Plaintiff's counsel. This fee award is fair and reasonable under the lodestar approach. *Driscoll v. George Wash. Univ.*, 55 F. Supp. 3d 106, 112-14 (D.D.C. 2014).

(1) the time and labor expended

Plaintiff's attorney including his three paralegals expended over 128.4 hours in this case. The total attorney's fee based on the individual hourly rate is $36,910 (and additional approximately $500 for cost and expenses including the court filing fee). The detailed report is attached hereto as Exhibit 2.

(2) the novelty and difficulty of the questions raised

This case presented common issues in routine wage and hour cases including the routinely stipulated interstate commerce (i.e. the FLSA individual coverage) issue and often disputed employer (i.e., small business operating individual owner's liability for the unpaid wages) issue.

(3) the skill required to properly perform the legal services rendered

This case does not require more than the skills that are required for the litigation of usual FLSA cases.

(4) the attorney's opportunity costs in pressing the instant litigation

The opportunity cost of litigating this case was relatively high, as Plaintiff was unable to pay even litigation costs as set forth above.

(5) the customary fee for like work

FLSA cases are routinely handled through a fee agreement containing the provisions for (and the expectation of) the Court awarded reasonable attorney's fee. The hourly rate of $430 of Plaintiff's attorney is substantially below the $742 hourly rate for an attorney with eleven to

nineteen years of experience and the hourly rate of $120 and $180 of paralegals is substantially below $202 of the paralegals set forth in the Laffey Matrix of 2018. A true and accurate copy of the Laffey Matrix 2018 is attached hereto as Exhibit 3.

Plaintiff's attorney has 15 years of attorney law practice in addition to 3 years of law clerk experience with a private law firm. Paralegal EM (Eileen Matos, paralegal, 56.8 hours x $180 hours; ) has over 3 years of paralegal experience and an associate degree in Paralegal Studies from Miami Dade College and a bachelor's degree. Paralegal LM (Lakita Marshall) has over 12 years of paralegal experience and she is currently enrolled in her last year of Jurisprudence Study at University of Baltimore and in her first year of University of Baltimore Law School. Paralegal HY (Heejung Yang) has over 2 years of paralegal experience with this law firm, a bachelor's degree in computer science and over 10 years of managerial experience.

Further, the hourly rate of $430 of Plaintiff's attorney is substantially below the hourly rate $491 of an attorney with the experience of 11-15 years and $544 for an attorney with the experience of 16-20 years and the hourly rate of $120 (HY), and $180 (EM, LM) of paralegals is substantially below or $14 per hour higher that $166 of the paralegals set forth in the USAO attorney's fees matrix for year 2018. A true and accurate copy of the USAO attorney's matrix is attached hereto as Exhibit 4.

(6) the attorney's expectations at the outset of the litigation

Plaintiff and Plaintiff's attorney entered into a fee agreement containing the provisions for the Court awarded reasonable attorney's fee in the beginning of this case prior to filing the complaint. The attorney's expectation therefore was to be compensated at the hourly rate for his and his paralegals work.

(7) the time limitations imposed by the client or circumstances

Plaintiff did not impose any particular time limitation.

(8) the amount in controversy and the results obtained

Plaintiff will receive $18,000 and Plaintiff's counsel will receive $17,000 including costs and expenses. Plaintiff is receiving approximately 139% of the maximum unpaid wages that Plaintiff alleges. Plaintiff's attorney is receiving approximately 46% of the attorney's fee so far incurred. Plaintiff's attorney is foregoing 54% of the attorney's fee so far incurred to facilitate the settlement.  Plaintiff is satisfied with the amount that exceeds his initial expectation and eager to see the lump sum in his hands.

(9) the experience, reputation and ability of the attorney

Plaintiff's attorney first admitted to the bar in 2004 has been practicing law including litigating FLSA and state wage and hour law cases in various jurisdictions: state and federal courts of Virginia, Maryland, the District of Columbia, and New York. Plaintiff's attorney has a fine reputation without any disciplinary records.

(10) the undesirability of the case within the legal community in which the suit arose

Plaintiff's attorney is honored to represent Plaintiff. However, the opportunity cost of litigating this case was relatively high, as Plaintiff was unable to pay even litigation costs. This case was also a single Plaintiff case, not a collective action or class action, limiting the potential damages and recovery to a modest amount. Therefore, the case was not a desirable one within the legal community in which the suit arose.

(11) the nature and length of the professional relationship between attorney and client

This case is the first time Plaintiff's attorney has worked for Plaintiff. Plaintiff does not operate any business; therefore, Plaintiff's attorney does not expect any repeat legal business from Plaintiff after this case.

(12) attorneys' fees awards in similar cases

The undersigned attorney settled multiple cases which were approved by the court for its attorney's fee petitions. Attorney's fee of $17,000 after the competition of discovery is quite low compared to other cases (often over $30,000). For that matter, Defendants' counsel also played an important role by cooperatively working with Plaintiff's counsel to control the attorney's fee.

## **CONCLUSION**

For the foregoing reasons, Plaintiff and Defendants jointly request that this Court approve the Settlement Agreement attached hereto as Exhibit 1 and dismiss all claims in this matter with prejudice.

Dated: March 19, 2019

Respectfully Submitted,

THE VERITAS LAW FIRM

 _/s/ Scott H. Rome_____
Scott H. Rome, Esq. [476677]
Christopher L. LaFon, Esq. [483740]
Anna R. Margolis, Esq. [1043917]
THE VERITAS LAW FIRM
1225 Nineteenth Street, NW, Suite 320
Washington, DC 20036
Phone:  (202) 686-7600
Fax:    (202) 293-3130
srome@theveritaslawfirm.com
*Counsel for Defendants*

/s/ Michael Hyunkweon Ryu
Michael Hyunkweon Ryu
Ryu & Ryu, PLC
301 Maple Ave West, Suite 620
Vienna, VA 22180
michaelryu@ryulawgroup.com
*Counsel for Plaintiff*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that I caused a copy of the foregoing to be served on the 19th day of March, 2019 upon counsel for Plaintiff via this Court's filing system.

Michael Hyunkweon Ryu
Ryu & Ryu, PLC
301 Maple Ave West, Suite 620
Vienna, VA 22180
michaelryu@ryulawgroup.com


  /s/ Scott H. Rome     
Scott H. Rome, Esq.

## CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE

This Confidential Settlement Agreement and Release (the "Agreement") is entered into by and between Chul Ho Kwag (hereinafter "Plaintiff"), on the one hand, and S & K Corporation, Kyeong Ja Jeong, and Se Yeong Jeong (hereinafter the "Defendants"), on the other hand, (collectively, the "Parties"), this ___ day of February, 2019 in accordance with the following Recitals, Terms, and Conditions:

## RECITALS

WHEREAS, Plaintiff alleges that he was a former employee of Defendants;

WHEREAS, Plaintiff has alleged that Defendants violated the Fair Labor Standards Act ("FLSA"), the District of Columbia Minimum Wage Act ("DCMWA"), and the District of Columbia Wage Payment and Collection Law ("DCWPCL").

WHEREAS, Plaintiff filed a lawsuit captioned "*Chul Ho Kwag v. S & K Corporation, et al.*," 1:18-cv-00395-RBW, in the United States District Court for the District of Columbia (hereinafter the "Lawsuit") which Lawsuit and its claims are hereinafter collectively referred to as "those Certain Claims";

WHEREAS, Defendants deny all allegations of those Certain Claims;

WHEREAS, the Parties have agreed to inform the court of this resolution in principal, and

WHEREAS, the Parties have agreed to resolve all of their respective differences regarding the Lawsuit and the claims therein and any appeals, those Certain Claims and regarding Plaintiff's employment with Defendants.

**WITNESSETH NOW, THEREFORE**, Plaintiff and Defendants agree as follows:

1

1.    **CONSIDERATION**

Defendants agree to pay the total sum of $35,000.00 ($18,000 for Plaintiff's damages and $17,000 for Plaintiff's attorney's reasonable attorney's fees), which includes all attorney's fees and expenses, within 15 days of the full execution of this Agreement, to Plaintiff, in care of their counsel, Michael Ryu (i.e., check payable to Ryu & Ryu, PLC). The total sum of $35,000.00 shall be held in Michael Ryu's IOLA account, and released upon the Court's approval of this settlement including this Settlement Agreement.

2.    **COURT'S APPROVAL AND MUTUAL RELEASE**

Plaintiff and Defendants acknowledge and agree that subject to the Court's approval this Agreement terminates all controversies of any nature whatsoever between Plaintiff and Defendants as of the date of this Agreement, including but not limited to the Lawsuit and those Certain Claims or any other claims relating in any way to Plaintiff's employment with Defendants. Plaintiff and Defendants shall file a joint motion for approval of this settlement including the petition for attorney's fee as well as dismissal of this case after the delivery of the payment referenced in Paragraph 1 of this Agreement. If the settlement is not approved, the $35,000.00 shall be returned to Defendants' counsel within seven (7) days unless the parties agree otherwise after the disapproval in furtherance of an amicable resolution.

A.    In exchange for the acceptance and receipt of such consideration as described in Paragraph 1, and for other good and valuable consideration, Plaintiff, for himself and his past, present or future predecessors, successors and assigns, attorneys, servants, agents, and employees, personal representatives, heirs and assigns, hereby release and forever discharge all Defendants and their respective past, present or future, predecessors, successors and assigns, parent entities, members, subsidiaries, affiliates, insurers, independent contractors, attorneys, servants, agents, and employees, personal representatives, heirs and assigns, from any and all

2

claims, causes of action, suits, damages and liabilities of every kind or nature whatsoever, whether direct or indirect, known or unknown, suspected or unsuspected, claimed or concealed, contingent or non-contingent, as of the date of this Agreement.

B.      In exchange for the acceptance and receipt of such consideration as described in Paragraph 1, and for other good and valuable consideration, Defendants, for themselves and their past, present or future predecessors, successors and assigns, attorneys, servants, agents, and employees, personal representatives, heirs and assigns, hereby release and forever discharge Plaintiff and his respective past, present or future, predecessors, successors and assigns, parent entities, members, subsidiaries, affiliates, insurers, independent contractors, attorneys, servants, agents, and employees, personal representatives, heirs and assigns, from any and all claims, causes of action, suits, damages and liabilities of every kind or nature whatsoever, whether direct or indirect, known or unknown, suspected or unsuspected, claimed or concealed, contingent or non-contingent, as of the date of this Agreement.

The claims, complaints, and causes of action released above include but are not limited to the Lawsuit, any claims Plaintiff or Defendants may have relating in any way to Plaintiff's employment with Defendants, including without limitation, any and all claims that Plaintiff might have arising under the FLSA, the DCWPCL, the DCMWA and all applicable federal, state, local, municipal, constitutional, or employment law, any common law, employment law, statutes, unemployment insurance claims, wrongful discharge statutes or rights of actions, human rights, workers compensation statutes, rules, ordinances, and laws, as amended.

3.    **NO ADMISSION OF LIABILITY**

Plaintiff acknowledges and understands that Defendants expressly deny any and all liability of each and every sort to Plaintiff and expressly deny that it has any legal responsibility

3

to Plaintiff that was not fulfilled.  It is further expressly understood and agreed by Plaintiff that this Agreement is made for purely economic reasons to terminate any and all disputes of any nature whatsoever between Plaintiff and Defendants as of the date of this Agreement, including but not limited to any controversies relating in any way to his employment with Defendants. Plaintiff understands and agrees that neither the payment of any sums of money nor this Agreement shall constitute or be construed as an admission of any liability on the part of Defendants, who expressly deny any wrongdoing or liability of any kind.

4.   **WARRANTIES**

Plaintiff expressly agrees that this Agreement contains a full settlement and is fair, adequate, and reasonable.  Plaintiff understands that this settlement is intended to resolve all disputes of any nature between Plaintiff and Defendants as of the date of this Agreement.

Plaintiff warrants that he has full knowledge of the terms, conditions, and effect of this Agreement and of Plaintiff's obligations under this settlement.  Plaintiff acknowledges that the terms of this Agreement are contractual and that no representations of fact or law or warranties concerning the same have been made to Plaintiff by Defendants.  Plaintiff warrants that no other promise or inducement has been made or offered to him, except as set forth in this Agreement, and warrants that this Agreement is executed without reliance upon any statements other than those contained herein.

In accepting the terms of this Agreement, Plaintiff represents that he has carefully read and understand the terms of this Agreement, and Plaintiff enters this Agreement of his own free will.

5.   **CHOICE OF LAW AND FORUM**

4

This Agreement shall be governed and construed in accordance with the laws of the District of Columbia.

## 6.   CONSTRUCTION

The terms of this Agreement are not to be construed against the party preparing it but are to be construed as if all of the Parties hereto prepared it.  If any provision of this Agreement is determined to be invalid or unenforceable, the Parties hereto agree that the invalid or unenforceable provisions shall be modified to the extent reasonably necessary to preserve the rights and obligations of the parties and the terms of this Agreement.

## 7.   COUNTERPARTS

This Agreement may be executed in one or more counterparts, and by electronic PDF format or facsimile signature, each of which shall be deemed an original and all of which shall constitute one in the same Agreement.

## 8.   DEFAULT

If Defendants fail to make a payment in accordance with the provisions of Paragraph 1, Plaintiff shall give written notice to Defendants' Counsel via email and mail at:

> Scott H. Rome
> Christopher L. LaFon
> Anna R. Margolis
> The Veritas Law Firm
> 1225 19th Street N.W., Suite 320
> Washington, D.C. 20036
> srome@theveritaslawfirm.com
> clafon@theveritaslawfirm.com
> amargolis@theveritaslawfirm.com

Upon receipt of such written notice, Defendants shall have seven (7) days to cure, and make full payment.

In the event that Defendants fail to make payment within seven (7) days (from the receipt of one of the emails or mail(s) to the addresses set forth above) of receipt of notice of the missed payment, Plaintiff shall have the right to seek a judgment for the full unpaid settlement amount including the reasonable attorney's fees for collection which is stipulated hereby to be $10,000, which will be due upon the expiration of the seven (7) days (from the receipt of one of the emails or mail(s) to the addresses set forth above) of receipt of notice of the missed payment.

9.   **RETENTION OF JURISDICTION**

The Parties agree that the United States District Court for the District of Columbia shall retain jurisdiction to enforce the terms of the settlement agreement among the parties as it pertains to this action only.

**[SIGNATURES FOLLOW ON THE NEXT PAGE]**

**IN WITNESS WHEREOF**, we, Chul Ho Kwag, and S & K Corporation, through its duly authorized corporate representative, Kyeong Ja Jeong, and Se Yeong Jeong , set our hands and seals, evidencing our respective agreement to all of the terms of this Agreement.

Date: _____          Chul Ho Kwag


S & K CORPORATION

Date: _____ 2/11/19 _____                By: Authorized Representative

Date: _____ 2/11/19 _____                Kyeong Ja Jeong

Date: _____ 2/11/19 _____                Se Yeong Jeong

7

**IN WITNESS WHEREOF**, we, Chul Ho Kwag, and S & K Corporation, through its duly authorized corporate representative, Kyungja Jeong, and Seyoung Keong, set our hands and seals, evidencing our respective agreement to all of the terms of this Agreement.

02 / 14 / 2019
Date:

Chul Ho Kwag


S & K CORPORATION


Date:

By: Authorized Representative


Date:

Kyungja Jeong


Date:

Seyoung Jeong

7

Exhibit 2

Michael Ryu

| date | description | hr |
|------|-------------|-----|
| 2/12/2018 | Draft complaint | 1.3 |
| 2/14/2018 | Legal research for attachments before judgment | 1.4 |
| 2/15/2018 | Review Time records analyzed time records | 0.9 |
| 2/15/2018 | Draft complaint | 0.4 |
| 2/16/2018 | Analysis of time record | 0.2 |
| 2/16/2018 | Meeting with client | 1.5 |
| 2/20/2018 | Damage calculations | 0.7 |
| 2/20/2018 | draft complaint | 1.7 |
| 2/20/2018 | Damage calculations | 0.2 |
| 2/21/2018 | Draft complaint | 1.0 |
| 2/21/2018 | Attention to the filing and service | 1.0 |
| 2/22/2018 | Draft Application for attachment before judgment | 0.8 |
| 3/8/2018 | Revised application for writ of attachment before judgment | 0.5 |
| 6/6/2018 | Telephone conference with client | 0.1 |
| 6/8/2018 | Telephone conference with the opposing counsel regarding joint discovery plan and settlement | 0.5 |
| 6/8/2018 | Telephone conference with the client to regarding the status of the litigation and the settlement discussion | 0.7 |
| 6/11/2018 | Preparation of local civil rule 16.3 (c) statements | 3.0 |
| 6/11/2018 | Preparation of local civil rule 16.3 (c) statements Addressing the additional items set forth by the scheduling order | 0.5 |
| 6/12/2018 | Conference with the opposing counsel for joint discovery report | 0.4 |
| 6/12/2018 | Preparation of joint discovery report | 1.1 |
| 6/21/2018 | Revised the joint report for opposing counsel to review | 1.6 |
| 6/22/2018 | Reviewed the joint report from the opposing counsel | 0.6 |
| 6/22/2018 | Prepare discovery demands | 4.9 |
| 6/25/2018 | Prepare the second draft of the joint report and forwarded it to the opposing counsel for review | 0.9 |
| 6/25/2018 | Email communications with the opposing counsel regarding the finalization of the joint report | 0.4 |
| 6/26/2018 | Draft discovery demands | 0.7 |
| 6/28/2018 | Revise the discovery demand | 0.2 |
| 6/29/2018 | Revise the discovery demand | 0.4 |
| 7/13/2018 | preparation of Rule 26(a)(1) disclosure | 2.1 |
| 7/16/2018 | preparation of Rule 26(a)(1) disclosure | 0.9 |
| 7/30/2018 | email communication with opposing counsel regarding settlement discussion | 0.2 |
| 9/14/2018 | telephone conference with client regarding defendant's offer | 0.4 |
| 9/19/2018 | response to an offer; made a counter offer | 0.4 |
| 9/25/2018 | preparation of expert witness disclosure | 1.3 |
| 9/27/2018 | Preparation of expert disclosure and report of an accounting expert | 2.7 |
| 9/27/2018 | Preparation of expert disclosure and report of a credit card processing expert | 0.3 |

| Date | Description | Hours |
|---|---|---|
| 9/27/2018 | Litigation scheduling | 0.4 |
| 9/27/2018 | Telephone conference with the opposing counsel regarding outstanding issues including stipulation and extension of time and in the interstate commerce | 0.2 |
| 9/27/2018 | Telephone conference with an expert | 1.0 |
| 9/28/2018 | Letter to the opposing counsel regarding the stipulation and extension | 1.0 |
| 9/28/2018 | Draft a consent motion for extension of time for expert disclosure | 0.4 |
| 9/28/2018 | Prepare discovery dispute memo | 0.4 |
| 9/28/2018 | Review revised time calculation based on D's production | 0.2 |
| 9/28/2018 | review discovery repsonse | 0.8 |
| 9/28/2018 | Letter to the opposing counsel regarding the stipulation and extension | 0.3 |
| 9/28/2018 | Draft a consent motion for extension of time for expert disclosure | 0.3 |
| 9/28/2018 | Updated unpaid wage calculation and communication with the opposing counsel | 0.3 |
| 9/28/2018 | Draft a consent motion for extension of time for expert disclosure | 0.6 |
| 10/1/2018 | check status of settlement negotiation | 0.3 |
| 10/2/2018 | emails The opposing counsel requesting the response to pending issues without delay | 0.2 |
| 10/3/2018 | emails The opposing counsel requesting the response to pending issues without delay | 0.2 |
| 10/12/2018 | email to opposing counsel regarding stipulation and settlement discussion | 0.4 |
| 10/12/2018 | research first data info in SEC filngs | 0.6 |
| 10/15/2018 | prepare for summary juddgment motion | 0.2 |
| 10/15/2018 | Research to draft a summary judgment motion | 0.8 |
| 11/2/2018 | prepare motion for partial summary judgment | 0.5 |
| 11/27/2018 | strategy meeting with a paralegal regarding service of process | 0.4 |
| 12/17/2018 | prepare settlement demand | 0.3 |
| 12/18/2018 | Telephone conference with client regarding settlement offer | 0.1 |
| 1/7/2019 | Telephone conference with the opposing counsel regarding settlement | 0.2 |
| 1/9/2019 | review email from The opposing counsel and drafted a response to that | 0.7 |
| 1/10/2019 | review settlement offer | 0.2 |
| 1/10/2019 | Discussion with client regarding offer from defendants; calculations for a counteroffer | 0.9 |
| 1/14/2019 | Review a counter offer and drafted and made another offer | 0.5 |
| 1/14/2019 | Draft a position two debtor's motion for contempt including legal research in support | 2.9 |
| 1/19/2019 | settlement discussion | 0.4 |
| 1/19/2019 | travel to court | 1.5 |
| 1/19/2019 | status hearing | 0.3 |
| 1/19/2019 | settlement discussion | 0.1 |
| 1/19/2019 | travel back to office from court | 1.0 |
| 2/7/2019 | Responded to defendants offer | 0.3 |
| 2/11/2019 | Revised draft settlement agreement | 1.6 |
| 2/11/2019 | Fine-tuning the terms of the settlement | 0.4 |
| | | 56.8 |

Eileen Matos

| date | description | hr |
|------|-------------|-----|
| 2/12/2018 | Draft of Complaint | 2.6 |
| 2/12/2018 | File management | 0.3 |
| 2/13/2018 | Research on Rule 64 and Attachment Before Judgment | 1.1 |
| 2/14/2018 | Research on DC minimum wage violation | 2.2 |
| 2/14/2018 | Draft to Complaint | 1.0 |
| 2/14/2018 | Pay Rate/Time Calculations | 0.5 |
| 2/14/2018 | Draft to Complaint- minimum wage violation Research for additional claims | 3.3 |
| 2/15/2018 | Pay Rate/Time Calculations | 1.9 |
| 2/15/2018 | Draft of Complaint | 6.6 |
| 2/20/2018 | Draft of Complaint | 2.4 |
| 2/20/2018 | Proof reading of Complaint | 2.7 |
| 2/21/2018 | Draft of Writ of Attachment | 0.7 |
| 2/21/2018 | Complaint Draft and Revised | 0.5 |
| 2/21/2018 | Draft of Summons | 0.2 |
| 2/21/2018 | Filing of Federal Complaint | 0.9 |
| 2/21/2018 | Draft of Waiver of Summons, and Prepared Shipment to All Defendants | 0.9 |
| 2/22/2018 | Draft of Writ of Attachment before Judment | 1.0 |
| 2/23/2018 | Draft of Affidavit for Writ of Attachment before Judment | 2.2 |
| 2/23/2018 | Draft of Affidavit for Writ of Attachment before Judment | 0.9 |
| 2/26/2018 | Call to USPS re Delivery of Complaint to All Defendants | 1.5 |
| 3/8/2018 | Draft of Application for Writ of Attachment before Judgment | 0.2 |
| 5/29/2018 | Draft of Interogatories | 0.4 |
| 5/30/2018 | Draft of Interogatories to 3 Defendants | 1.9 |
| 5/30/2018 | Draft of RPD to ALL Defendants | 2.5 |
| 5/31/2018 | Draft of Request for Admissions Defendant S & K Corp. | 2.7 |
| 5/31/2018 | Draft of Request for Admissions Defendant SJ | 4.9 |
| 6/11/2018 | Draft of Disclosure | 1.0 |
| 6/25/2018 | Efiled Joint Status Report | 0.7 |
| 6/26/2018 | Review of Discovery | 0.5 |
| 6/26/2018 | Revision to Plaintiff's Interrogatories to K Jeong | 1.2 |
| 6/26/2018 | Revision to Plaintiff's Interrogatories S & K Corp. | 1.7 |
| 6/27/2018 | Revision to Plaintiff's Interrogatories to S Jeong | 0.4 |
| 6/27/2018 | Revision to Plaintiff's Interrogatories to K Jeong | 0.3 |
| 6/29/2018 | Revision to Discovery Demands | 1.5 |
| 7/2/2018 | Revision to Discovery Demands and service to opposing counsel | 1.2 |
| 7/16/2018 | Revision to Rule 26(a) Initial Disclosure | 1.9 |
| 7/16/2018 | Final revision and filing of Rule 26(a) Initial Disclosure | 0.4 |
| | | 56.8 |

Lakita Marshall

| date | description | hr |
|------|-------------|-----|
| 9/28/2018 | Meeting with attorney regarding case status | 0.8 |
| 9/28/2018 | Draft letter to Opposing Counsel | 1.2 |
| 9/28/2018 | Draft Consent Motion for Extension of time | 4.5 |
| 9/28/2018 | Filing of the motion | 0.2 |
| 10/1/2018 | Calendaring for the case | 0.4 |

| 10/2/2018 | Calendaring for the Case | 0.2 |
| 1/8/2019 | Attention to scheduling order | 0.1 |
| 1/8/2019 | Draft letter to opposing counsel | 0.5 |
| 1/9/2019 | Revised the letter to opposing counsel | 0.2 |
| | | 8.1 |

Heejung Yang

| date | description | hr |
|---|---|---|
| 2/13/2018 | Make draft file for unpaid wage calculations | 0.4 |
| 2/15/2018 | Calculate unpaid wage | 1.5 |
| 2/16/2018 | Revised unpaid wage calculations | 0.5 |
| 2/20/2018 | Revised unpaid wage calculations | 1.3 |
| 7/16/2018 | Revised unpaid wage calculations | 3.0 |
| | | 6.7 |

# LAFFEY MATRIX

History

Case Law

Expert Opinion

**See the Matrix**

Contact us

Home

Links

| Year | Adjustmt Factor** | Paralegal/ Law Clerk | Years Out of Law School * | | | | |
|---|---|---|---|---|---|---|---|
| | | | 1-3 | 4-7 | 8-10 | 11-19 | 20 + |
| 6/01/18- 5/31/19 | 1.0350 | $202 | $371 | $455 | $658 | $742 | $894 |
| 6/01/17- 5/31/18 | 1.0463 | $196 | $359 | $440 | $636 | $717 | $864 |
| 6/01/16- 5/31/17 | 1.0369 | $187 | $343 | $421 | $608 | $685 | $826 |
| 6/01/15- 5/31/16 | 1.0089 | $180 | $331 | $406 | $586 | $661 | $796 |
| 6/01/14- 5/31/15 | 1.0235 | $179 | $328 | $402 | $581 | $655 | $789 |
| 6/01/13- 5/31/14 | 1.0244 | $175 | $320 | $393 | $567 | $640 | $771 |
| 6/01/12- 5/31/13 | 1.0258 | $170 | $312 | $383 | $554 | $625 | $753 |
| 6/01/11- 5/31/12 | 1.0352 | $166 | $305 | $374 | $540 | $609 | $734 |
| 6/01/10- 5/31/11 | 1.0337 | $161 | $294 | $361 | $522 | $589 | $709 |
| 6/01/09- 5/31/10 | 1.0220 | $155 | $285 | $349 | $505 | $569 | $686 |
| 6/01/08- 5/31/09 | 1.0399 | $152 | $279 | $342 | $494 | $557 | $671 |
| 6/01/07-5/31/08 | 1.0516 | $146 | $268 | $329 | $475 | $536 | $645 |
| 6/01/06-5/31/07 | 1.0256 | $139 | $255 | $313 | $452 | $509 | $614 |
| 6/1/05-5/31/06 | 1.0427 | $136 | $249 | $305 | $441 | $497 | $598 |
| 6/1/04-5/31/05 | 1.0455 | $130 | $239 | $293 | $423 | $476 | $574 |
| 6/1/03-6/1/04 | 1.0507 | $124 | $228 | $280 | $405 | $456 | $549 |
| 6/1/02-5/31/03 | 1.0727 | $118 | $217 | $267 | $385 | $434 | $522 |
| 6/1/01-5/31/02 | 1.0407 | $110 | $203 | $249 | $359 | $404 | $487 |
| 6/1/00-5/31/01 | 1.0529 | $106 | $195 | $239 | $345 | $388 | $468 |
| 6/1/99-5/31/00 | 1.0491 | $101 | $185 | $227 | $328 | $369 | $444 |
| 6/1/98-5/31/99 | 1.0439 | $96 | $176 | $216 | $312 | $352 | $424 |
| 6/1/97-5/31/98 | 1.0419 | $92 | $169 | $207 | $299 | $337 | $406 |
| 6/1/96-5/31/97 | 1.0396 | $88 | $162 | $198 | $287 | $323 | $389 |
| 6/1/95-5/31/96 | 1.032 | $85 | $155 | $191 | $276 | $311 | $375 |

| 6/1/94–5/31/95 | 1.0237 | $82 | $151 | $185 | $267 | $301 | $363 |

The methodology of calculation and benchmarking for this Updated Laffey Matrix has been approved in a number of cases. See, e.g., McDowell v. District of Columbia, Civ. A. No. 00-594 (RCL), LEXSEE 2001 U.S. Dist. LEXIS 8114 (D.D.C. June 4, 2001); Salazar v. Dist. of Col., 123 F.Supp.2d 8 (D.D.C. 2000).

* "Years Out of Law School" is calculated from June 1 of each year, when most law students graduate. "1-3" includes an attorney in his 1st, 2nd and 3rd years of practice, measured from date of graduation (June 1). "4-7" applies to attorneys in their 4th, 5th, 6th and 7th years of practice. An attorney who graduated in May 1996 would be in tier "1-3" from June 1, 1996 until May 31, 1999, would move into tier "4-7" on June 1, 1999, and tier "8-10" on June 1, 2003.

** The Adjustment Factor refers to the nation-wide Legal Services Component of the Consumer Price Index produced by the Bureau of Labor Statistics of the United States Department of Labor.

Exhibit 4

# USAO ATTORNEY'S FEES MATRIX — 2015-2019

*Revised Methodology starting with 2015-2016 Year*

Years (Hourly Rate for June 1 – May 31, based on change in PPI-OL since January 2011)

| Experience | 2015-16 | 2016-17 | 2017-18 | 2018-19 |
|---|---|---|---|---|
| 31+ years | 568 | 581 | 602 | 613 |
| 21-30 years | 530 | 543 | 563 | 572 |
| 16-20 years | 504 | 516 | 536 | 544 |
| 11-15 years | 455 | 465 | 483 | 491 |
| 8-10 years | 386 | 395 | 410 | 417 |
| 6-7 years | 332 | 339 | 352 | 358 |
| 4-5 years | 325 | 332 | 346 | 351 |
| 2-3 years | 315 | 322 | 334 | 340 |
| Less than 2 years | 284 | 291 | 302 | 307 |
| Paralegals & Law Clerks | 154 | 157 | 164 | 166 |

*Explanatory Notes*

1.   This matrix of hourly rates for attorneys of varying experience levels and paralegals/law clerks has been prepared by the Civil Division of the United States Attorney's Office for the District of Columbia (USAO) to evaluate requests for attorney's fees in civil cases in District of Columbia courts.  The matrix is intended for use in cases in which a fee-shifting statute permits the prevailing party to recover "reasonable" attorney's fees.  *See, e.g.,* 42 U.S.C. § 2000e-5(k) (Title VII of the 1964 Civil Rights Act); 5 U.S.C. § 552(a)(4)(E) (Freedom of Information Act); 28 U.S.C. § 2412(b) (Equal Access to Justice Act).  The matrix has not been adopted by the Department of Justice generally for use outside the District of Columbia, or by other Department of Justice components, or in other kinds of cases.  The matrix does **not** apply to cases in which the hourly rate is limited by statute.  *See* 28 U.S.C. § 2412(d).

2.   A "reasonable fee" is a fee that is sufficient to attract an adequate supply of capable counsel for meritorious cases.  *See, e.g., Perdue v. Kenny A. ex rel. Winn,* 559 U.S. 542, 552 (2010).  Consistent with that definition, the hourly rates in the above matrix were calculated from average hourly rates reported in 2011 survey data for the D.C. metropolitan area, which rates were adjusted for inflation with the Producer Price Index-Office of Lawyers (PPI-OL) index.  The survey data comes from ALM Legal Intelligence's 2010 & 2011 Survey of Law Firm Economics.  The PPI-OL index is available at http://www.bls.gov/ppi.  On that page, under "PPI Databases," and "Industry Data (Producer Price Index - PPI)," select either "one screen" or "multi-screen" and in the resulting window use "industry code" 541110 for "Offices of Lawyers" and "product code" 541110541110 for "Offices of Lawyers."  The average hourly rates from the 2011 survey data are multiplied by the PPI-OL index for May in the year of  the update, divided by 176.6, which is the PPI-OL index for January 2011, the month of the survey data, and then rounding to the nearest whole dollar (up if remainder is 50¢ or more).

3.   The PPI-OL index has been adopted as the inflator for hourly rates because it better reflects the mix of legal services that law firms collectively offer, as opposed to the legal services that typical consumers use, which is what the CPI-

Legal Services index measures. Although it is a national index, and not a local one, *cf. Eley v. District of Columbia*, 793 F.3d 97, 102 (D.C. Cir. 2015) (noting criticism of national inflation index), the PPI-OL index has historically been generous relative to other possibly applicable inflation indexes, and so its use should minimize disputes about whether the inflator is sufficient.

4.    The methodology used to compute the rates in this matrix replaces that used prior to 2015, which started with the matrix of hourly rates developed in *Laffey v. Northwest Airlines, Inc.* 572 F. Supp. 354 (D.D.C. 1983), *aff'd in part, rev'd in part on other grounds*, 746 F.2d 4 (D.C. Cir. 1984), *cert. denied*, 472 U.S. 1021 (1985), and then adjusted those rates based on the Consumer Price Index for All Urban Consumers (CPI-U) for the Washington-Baltimore (DC-MD-VA-WV) area. Because the USAO rates for the years 2014-15 and earlier have been generally accepted as reasonable by courts in the District of Columbia, *see* note 9 below, the USAO rates for those years will remain the same as previously published on the USAO's public website. That is, the USAO rates for years prior to and including 2014-15 remain based on the prior methodology, *i.e.*, the original *Laffey* Matrix updated by the CPI-U for the Washington-Baltimore area. *See Citizens for Responsibility & Ethics in Washington v. Dep't of Justice*, 142 F. Supp. 3d 1 (D.D.C. 2015) and Declaration of Dr. Laura A. Malowane filed therein on Sept. 22, 2015 (Civ. Action No. 12-1491, ECF No. 46-1) (confirming that the USAO rates for 2014-15 computed using    prior methodology are reasonable).

5.    Although the USAO will not issue recalculated *Laffey* Matrices for past years using the new methodology, it will not oppose the use of that methodology (if properly applied) to calculate reasonable attorney's fees under applicable fee-shifting statutes for periods prior to June 2015, provided that methodology is used consistently to calculate the entire fee amount. Similarly, although the USAO will no longer issue an updated *Laffey* Matrix computed using the prior methodology, it will not oppose the use of the prior methodology (if properly applied) to calculate reasonable attorney's fees under applicable fee-shifting statutes for periods after May 2015, provided that methodology is used consistently to calculate the entire fee amount.

6.    The various "brackets" in the column headed "Experience" refer to the attorney's years of experience practicing law. Normally, an attorney's experience will be calculated starting from the attorney's graduation from law school. Thus, the "Less than 2 years" bracket is generally applicable to attorneys in their first and second years after graduation from law school, and the "2-3 years" bracket generally becomes applicable on the second anniversary of the attorney's graduation (*i.e.*, at the beginning of the third year following law school). *See Laffey*, 572 F. Supp. at 371. An adjustment may be necessary, however, if the attorney's admission to the bar was significantly delayed or the attorney did not otherwise follow a typical career progression. *See, e.g., EPIC v. Dep't of Homeland Sec.*, 999 F. Supp. 2d 61, 70-71 (D.D.C. 2013) (attorney not admitted to bar compensated at "Paralegals & Law Clerks" rate); *EPIC v. Dep't of Homeland Sec.*, 982 F. Supp. 2d 56, 60-61 (D.D.C. 2013) (same). The various experience levels were selected by relying on the levels in the ALM Legal Intelligence 2011 survey data. Although finer gradations in experience level might yield different estimates of market rates, it is important to have statistically sufficient sample sizes for each experience level. The experience categories in the current USAO Matrix are based on statistically significant sample sizes for each experience level.

7.    ALM Legal Intelligence's 2011 survey data does not include rates for paralegals and law clerks. Unless and until reliable survey data about actual paralegal/law clerk rates in the D.C. metropolitan area become available, the USAO will compute the hourly rate for Paralegals & Law Clerks using the most recent historical rate from the USAO's former *Laffey* Matrix (*i.e.*, $150 for 2014-15) updated with the PPI-OL index. The formula is $150 multiplied by the PPI-OL index for May in the year of the update, divided by 194.3 (the PPI-OL index for May 2014), and then rounding to the nearest whole dollar (up if remainder is 50¢ or more).

8.    The USAO anticipates periodically revising the above matrix if more recent reliable survey data becomes available, especially data specific to the D.C. market, and in the interim years updating the most recent survey data with the PPI-OL index, or a comparable index for the District of Columbia if such a locality-specific index becomes available.

9.    Use of an updated *Laffey* Matrix was implicitly endorsed by the Court of Appeals in *Save Our Cumberland Mountains v. Hodel*, 857 F.2d 1516, 1525 (D.C. Cir. 1988) (en banc). The Court of Appeals subsequently stated that parties may rely on the updated *Laffey* Matrix prepared by the USAO as evidence of prevailing market rates for litigation counsel in the Washington, D.C. area. *See Covington v. District of Columbia*, 57 F.3d 1101, 1105 & n.14, 1109 (D.C. Cir. 1995), *cert. denied*, 516 U.S. 1115 (1996). Most lower federal courts in the District of Columbia

have relied on the USAO's *Laffey* Matrix, rather than the so-called "*Salazar* Matrix" (also known as the "LSI Matrix" or the "Enhanced *Laffey* Matrix"), as the "benchmark for reasonable fees" in this jurisdiction. *Miller v. Holzmann*, 575 F. Supp. 2d 2, 18 n.29 (D.D.C. 2008) (quoting *Pleasants v. Ridge*, 424 F. Supp. 2d 67, 71 n.2 (D.D.C. 2006)); *see, e.g., Joaquin v. Friendship Pub. Charter Sch.*, 188 F. Supp. 3d 1 (D.D.C. 2016); *Prunty v. Vivendi*, 195 F. Supp. 3d 107 (D.D.C. 2016); *CREW v. U.S. Dep't of Justice*, 142 F. Supp. 3d 1 (D.D.C. 2015); *McAllister v. District of Columbia*, 21 F. Supp. 3d 94 (D.D.C. 2014); *Embassy of Fed. Republic of Nigeria v. Ugwuonye*, 297 F.R.D. 4, 15 (D.D.C. 2013); *Berke v. Bureau of Prisons*, 942 F. Supp. 2d 71, 77 (D.D.C. 2013); *Fisher v. Friendship Pub. Charter Sch.*, 880 F. Supp. 2d 149, 154-55 (D.D.C. 2012); *Sykes v. District of Columbia*, 870 F. Supp. 2d 86, 93-96 (D.D.C. 2012); *Heller v. District of Columbia*, 832 F. Supp. 2d 32, 40-49 (D.D.C. 2011); *Hayes v. D.C. Public Schools*, 815 F. Supp. 2d 134, 142-43 (D.D.C. 2011); *Queen Anne's Conservation Ass'n v. Dep't of State*, 800 F. Supp. 2d 195, 200-01 (D.D.C. 2011); *Woodland v. Viacom, Inc.*, 255 F.R.D. 278, 279-80 (D.D.C. 2008); *American Lands Alliance v. Norton*, 525 F. Supp. 2d 135, 148-50 (D.D.C. 2007). *But see, e.g.*, *Salazar v. District of Columbia*, 123 F. Supp. 2d 8, 13-15 (D.D.C. 2000). Since initial publication of the instant USAO Matrix in 2015, numerous courts similarly have employed the USAO Matrix rather than the *Salazar* Matrix for fees incurred since 2015. *E.g., Electronic Privacy Information Center v. United States Drug Enforcement Agency*, 266 F. Supp. 3d 162, 171 (D.D.C. 2017) ("After examining the case law and the supporting evidence offered by both parties, the Court is persuaded that the updated USAO matrix, which covers billing rates from 2015 to 2017, is the most suitable choice here.") (requiring re-calculation of fees that applicant had computed according to *Salazar* Matrix); *Clemente v. FBI*, No. 08-1252 (BJR) (D.D.C. Mar. 24, 2017), 2017 WL 3669617, at *5 (applying USAO Matrix, as it is "based on much more current data than the *Salazar* Matrix"); *Gatore v. United States Dep't of Homeland Security*, 286 F. Supp. 3d 25, 37 (D.D.C. 2017) (although plaintiff had submitted a "'great deal of evidence regarding [the] prevailing market rates for complex federal litigation' to demonstrate that its requested [*Salazar*] rates are entitled to a presumption of reasonableness, . . . the Court nonetheless concludes that the defendant has rebutted that presumption and shown that the current USAO Matrix is the more accurate matrix for estimating the prevailing rates for complex federal litigation in this District"); *DL v. District of Columbia*, 267 F. Supp. 3d 55, 70 (D.D.C. 2017) ("the USAO Matrix ha[s] more indicia of reliability and more accurately represents prevailing market rates" than the *Salazar* Matrix). The USAO contends that the *Salazar* Matrix is fundamentally flawed, does not use the *Salazar* Matrix to determine whether fee awards under fee-shifting statutes are reasonable, and will not consent to pay hourly rates calculated with the methodology on which that matrix is based. The United States recently submitted an appellate brief that further explains the reliability of the USAO Matrix vis-à-vis the *Salazar* matrix. *See* Br. for the United States as *Amicus Curiae* Supporting Appellees, *DL v. District of Columbia*, No. 18-7004 (D.C. Cir. filed July 20, 2018).