UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| CHUL HO KWAG, )<br>)<br>           Plaintiff, )<br>   v. )<br>)<br>S & K CORPORATION, <u>et al.</u>, )<br>)<br>           Defendants. )<br>) | Civil Action No. 18-395 (RBW) |

**ORDER**

The plaintiff, Chul Ho Kwag, brings this action against his former employer, S & K Corporation, doing business as 11th & M Corner Market ("S & K"), and Kyungja and Seyoung Jeong, the owners and Chief Executive Officers of S & K (the "individual defendants") (collectively, the "defendants"), alleging that the defendants failed to pay minimum and overtime wages owed to him in violation of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201–19 (2018); the District of Columbia Minimum Wage Act ("DCMWA"), D.C. Code §§ 32–1001 to –1015 (2018); and the District of Columbia Wage Payment and Collection Law ("DCWPCL"), D.C. Code §§ 32–1301 to –1312.  Complaint ("Compl.") ¶ 1; see id. at 1. Currently pending before the Court are the parties' (1) Joint Motion to Approve Settlement Agreement and Dismiss All Claims With Prejudice ("Joint Mot." or the "joint motion") and (2) Consent Waiver of Hearing for Joint Motion to Approve Settlement Agreement and Dismiss All Claims With Prejudice ("Consent Waiver" or the "consent waiver").  For the following reasons, the Court will grant the parties' joint motion and consent waiver.

**I.     BACKGROUND**

On February 21, 2018, the plaintiff, who "performed manual labor for [the]

[d]efendants[] as a cashier at a convenience store," Compl. ¶ 12, instituted this civil action against the defendants, see id. at 1. On January 18, 2019, the Court referred the matter to a Magistrate Judge for mediation. See Order (Jan. 18, 2019), ECF No. 14. "In an effort to resolve this dispute, the [p]arties engaged in good-faith negotiations, which resulted in a settlement agreement that the [p]arties have executed" and submitted to the Court for its approval. Joint Mot. at 1. The parties thereafter filed their consent waiver, requesting "an expedited ruling in favor of granting the [ ] relief" in the joint motion, Consent Waiver at 1, by approving the settlement agreement and dismissing all of the plaintiff's claims with prejudice, see Joint Mot. at 13, based on the plaintiff's "urgent need of fund[s] to take care of his personal financial matter," Consent Waiver at 1.

## II.   DISCUSSION

As the Court has previously noted:

> The [District of Columbia] Circuit has not opined about whether judicial approval is required of . . . []FLSA[] settlements reached after an FLSA suit has been filed or the related issue of whether such approval is a prerequisite for subsequent judicial enforcement of a private settlement. However, given that a court's refusal to assess proposed FLSA settlements ex ante leaves the parties in an uncertain position[,] courts in this district often agree to review proposed FLSA settlements when the parties jointly seek judicial approval.

Order at 1 (Mar. 19, 2019), ECF No. 17 (first alteration in original) (quoting Eley v. Stadium Grp., LLC, 236 F. Supp. 3d 59, 62 (D.D.C. 2017)). "When assessing the terms of an FLSA settlement agreement, the [C]ourt must first determine whether the proposed settlement 'resolves a bona fide dispute.'" Eley, 236 F. Supp. 3d at 62–63 (quoting Carrillo v. Dandan Inc., 51 F. Supp. 3d 124, 131 (D.D.C. 2014)). "Once a bona fide dispute has been established, the [C]ourt must consider 'whether the agreement reflects a reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching.'"

Sarceno v. Choi, 78 F. Supp. 3d 446, 450 (D.D.C. 2015) (second alteration in original) (quoting Carrillo, 51 F. Supp. 3d at 132). "[W]hen a proposed settlement of FLSA claims includes the payment of attorney['s] fees, courts regularly assess the reasonableness of the fee award," and "consider[] the percentage of the recovery that is compromised of attorney['s] fees, as well as the relationship between the costs incurred and the fees recovered." Eley, 236 F. Supp. 3d at 63.

The Court therefore first addresses whether the proposed settlement resolves a bona fide dispute. "A settlement is bona fide if it reflects a reasonable compromise over issues that are actually in dispute, since merely waiving a right to wages owed is disallowed under [D.A. Schulte, Inc. v. ]Gangi and Brooklyn Savings Bank v. O'Neil." Sarceno, 78 F. Supp. 3d at 450 (internal quotation marks omitted) (first citing D.A. Schulte, Inc. v. Gange, 328 U.S. 108, 115 (1946); then citing Brooklyn Savings Bank v. O'Neil, 324 U.S. 697, 707 (1945)). The parties contend that the proposed settlement resolves a bona fide dispute because "[t]he parties dispute [ ] the amount of the unpaid wages." Joint Mot. at 3. Specifically, the "[d]efendants assert that [the] [p]laintiff's calculations are inflated, and [the] [p]laintiff, by contrast, asserts that the calculations are accurate and that [the] [d]efendants' records will support a claim for unpaid wages and damage under the FLSA." Id. Because the parties dispute the amount of wages owed to the plaintiff, the Court concludes that the proposed settlement resolves a bona fide dispute. See Sarceno, 78 F. Supp. 3d at 450 ("[T]he most fundamental question in any FLSA action, namely, the amount of wages owed [to] the plaintiff, is contested, rendering the settlement agreement a compromise over a bona fide dispute.").

The Court next addresses whether the proposed settlement "reflects a reasonable compromise of disputed issues." Eley, 236 F. Supp. 3d at 63 (quoting Sarceno, 78 F. Supp. 3d at 450). In making this determination, the Court must "take[] [into] account [ ] 'the totality of the

circumstances' to determine whether an FLSA settlement is fair, reasonable, and adequate, rather than merely a waiver of rights," Sarceno, 78 F. Supp. 3d at 451 (quoting Carrillo, 51 F. Supp. 3d at 132), and therefore

> consider [(1)] whether the proposed settlement [ ] was the product of "overreaching" by the employer; (2) whether the settlement was "the product of negotiation between represented parties following . . . [a]rm's length bargaining[;]"; and (3) whether there exists serious impediments to the collection of a judgment by the plaintiff[],

id. (fourth and fifth alterations in original) (quoting Carrillo, 51 F. Supp. 3d at 132).

As to the first factor, the parties claim that "[t]he [a]greed-[u]pon [m]onetary [t]erms of the [s]ettlement [a]greement [w]ere [n]ot the [p]roduct of [o]verreaching" by the defendants because the "[p]laintiff is receiving approximately 139% of the maximum unpaid wages that [he] alleges" he is owed, the "[p]laintiff's attorney is receiving approximately 46% of the attorney's fee[s] so far incurred," and the "[p]laintiff is satisfied with the amount that exceeds his initial expectation." Joint Mot. at 8–9. "A settlement that provides total damages closer to that asserted by the plaintiff[] than the defendants would not appear to be one that is a product of employer 'overreaching.'" Carrillo, 51 F. Supp. 3d at 133–34. Accordingly, the Court concludes that the proposed settlement does not appear to be the product of overreaching by the defendants.

As to the second factor, the parties claim that "[t]he [s]ettlement [w]as the [p]roduct of [n]egotiation [b]etween [r]epresented [p]arties [f]ollowing [a]rm's [l]ength [b]argaining" because "the [p]arties were represented by independent counsels" and "[t]he agreed-upon monetary terms of the settlement agreement are the product of nearly ten months of negotiations," Joint Mot. at 9, some of which were overseen by a Magistrate Judge, see Order (Jan. 18, 2019), ECF No. 14. Based on the parties' representations, the Court concludes that this factor is also satisfied. See

4

Sarceno, 78 F. Supp. 3d at 452 ("The second element, whether the agreement is a result of arm's length negotiation, is met easily.  The parties engaged in [fourteen] months of negotiations, during which time the parties were represented by competent counsel.  Some of these negotiations were supervised by a Magistrate Judge, which further bolsters the arm's length nature of the negotiations." (internal quotation marks omitted)).

As to the third factor, the parties argue claim that "[t]here [e]xist [s]erious [i]mpediments to the [c]ollection of a [j]udgment by the [p]laintiff" because S & K "has already gone out of business" and the individual defendants' "real property assets are partly encumbered by mortgages and held by the tenancy by entirety," and that "recovery of the judgment would need a substantial amount of collection efforts."  Joint Mot. at 9.  "Based on these representations, 'the Court is satisfied that the settlement appropriately considers the potential benefits and pitfalls of proceeding to trial.'"  Eley, 236 F. Supp. 3d at 65 (quoting Sarceno, 78 F. Supp. 3d at 452). Accordingly, because the proposed settlement satisfies the three-factor test articulated in Carrillo, the Court is satisfied that the proposed settlement "is fair, reasonable, and adequate, rather than merely a waiver of rights."  Carrillo, 51 F. Supp. 3d at 132.

Finally, the Court addresses the proposed attorney's fees payable to the plaintiff's attorney, which are included as part of the overall settlement figure.  Under the terms of the proposed settlement agreement, the "[p]laintiff will receive $18,000 and [the] [p]laintiff's counsel will receive $17,000 including costs and expenses."  Joint Mot. at 5.  The parties agree that the proposed attorney's fees are reasonable because

> [t]he hourly rate of $430 of [the] [p]laintiff's attorney is substantially below the $742 hourly rate for an attorney with eleven to nineteen years of experience and the hourly rate of $120 and $180 of paralegals is substantially below [the] $202 [hourly rate] of paralegals set forth in the [LSI] Laffey [m]atrix of 2018.

Joint Mot. at 10–11 (emphasis added).

In cases brought under the DCMWA and DCWPCL, the District of Columbia Code provides that

> [i]n any judgment in favor of any employee under this section, and in any proceeding to enforce such a judgment, the court shall award to each attorney for the employee an additional judgment for costs, including attorney's fees computed pursuant to the matrix approved in Salazar v. District of Columbia, 123 F. Supp. 2d 8 (D.D.C. 2000), [i.e., the LSI Laffey matrix], and updated to account for the current market hourly rates for attorney's services. The court shall use the rates in effect at the time the determination is made.

D.C. Code § 32–1308(b)(1); see Herrera v. Mitch O'Hara LLC, 257 F. Supp. 3d 37, 46 (D.D.C. 2017) ("Because the Salazar court utilized . . . the []LSI Laffey matrix[], the statute's plain language requires use of the LSI Laffey matrix to determine the applicable rate."). "[T]he judgment of the [District of Columbia] government that the LSI Laffey rates are appropriate for wage claims brought in this District is persuasive evidence that such rates are the prevailing rates in the community for this work," including work under the FLSA. Serrano v. Chicken-Out Inc., 209 F. Supp. 3d 179, 197 (D.D.C. 2016).

Because attorney's fees awarded under the DCMWA and DCWPCL are calculated according to the LSI Laffey matrix, the Court concludes that the proposed attorney and paralegal rates, which are lower than the applicable LSI Laffey matrix rates, compare Joint Mot. at 6 (listing the attorney and paralegal rates charged and the costs incurred in this case), with id., Exhibit ("Ex.") 3 (LSI Laffey matrix), are reasonable, see Ventura v. Bebo Foods, Inc., 738 F. Supp. 2d 8, 34 (D.D.C. 2010) (finding that the requested attorneys' fees were reasonable because the attorneys' rates were "lower than those listed in the Laffey [m]atrix for attorneys with their experience"). Moreover, the fact that the proposed fees account for less than half of the total recovery by the plaintiff suggests to the Court that the proposed fees are reasonable. See Eley, 236 F. Supp. 3d at 65 (approving settlement agreement where "proposed fee award represent[ed]

approximately [thirty-seven percent] of the total recovery"); Sarceno, 78 F. Supp. 3d at 452 (approving settlement agreement where "[t]he negotiated attorneys' fees represent[ed] less than half of the total recovery"); Carrillo, 51 F. Supp. 3d at 133 (approving settlement agreement where proposed fee award represented approximately fifty-five percent of the total recovery); cf. Carrillo, 51 F. Supp. 3d at 134 ("The Court is reluctant to approve a settlement where the plaintiffs' attorneys receive more in compensation than the plaintiffs themselves.").

For the foregoing reasons, the Court concludes that the terms of the proposed settlement are reasonable and therefore the proposed settlement agreement is approved. Accordingly, it is hereby

**ORDERED** that the parties' Joint Motion to Approve Settlement Agreement and Dismiss All Claims With Prejudice, ECF No. 16, is **GRANTED**. It is further

**ORDERED** that the parties' Consent Waiver of Hearing for Joint Motion to Approve Settlement Agreement and Dismiss All Claims With Prejudice, ECF No. 18, is **GRANTED**. It is further

**ORDERED** that the plaintiff's Complaint is **DISMISSED WITH PREJUDICE**. It is further

**ORDERED** that this case is **CLOSED**.

**SO ORDERED** this 26th day of April, 2019.

REGGIE B. WALTON
United States District Judge